PEOPLE v WHITFIELD

1. CRIMINAL LAW—EVIDENCE—LIE-DETECTOR TEST—IMPROPER REFERENCE—INADVERTENT REFERENCE—INSTRUCTIONS TO JURY—SUA SPONTE INSTRUCTION—ISOLATED INCIDENT—PRESERVING QUESTION APPEAL AND ERROR.

The Court of Appeals has the power, and perhaps the duty, to consider the possible prejudicial impact of improper reference during trial to a lie-detector test even in the absence of an objection by trial counsel, or failure to request a cautionary instruction; and reversible error will be found where there is repeated reference to the test and that testimony is used to bolster and rehabilitate the witness's credibility, but not where the reference is brief and inadvertent and was an isolated incident not pursued beyond its initial introduction and there was no miscarriage of justice.

2. CRIMINAL LAW—EVIDENCE—CROSS-EXAMINATION—JUDGES—DISCRETION—RAPE—PRIOR SEXUAL ACTIVITY—ABUSE OF DISCRETION—INADMISSIBILITY.

The scope of cross-examination is within the sound discretion of the trial judge and the Court of Appeals will not disturb that discretion unless it is convinced it has been abused; therefore, where the trial court exercised its discretion to preclude defense counsel from questioning a complainant in a rape prosecution as to her prior sexual activities with third parties the failure to admit such cross-examination was proper in the absence of a showing of abuse of discretion.

3. RAPE—SEXUAL CONDUCT—SPECIFIC INSTANCES—OPINION AND REPUTATION—CONDUCT WITH DEFENDANT—ORIGIN OF EVIDENCE.

Public policy precludes the admission of evidence of specific instances of a victim's sexual conduct, as well as opinion and reputation evidence of the victim's sexual conduct, in a rape

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence § 831.
 75 Am Jur 2d, Trial §§ 919–922.
[2, 3] 65 Am Jur 2d, Rape §§ 82–85.

prosecution unless it specifically relates to the victim's previous sexual activities with the defendant or if it was somehow related to the source or origin of semen, pregnancy or disease (MCLA 750.520[j]).

Appeal from Kalamazoo, Lucien F. Sweet, J. Submitted Division 3 January 15, 1975, at Grand Rapids. (Docket No. 19646.) Decided February 12, 1975.

Luther Whitfield was convicted of rape. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Donald A. Burge,* Prosecuting Attorney, and *Stephen M. Wheeler,* Chief of Appellate Division, for the people.

*Charles J. Daudert,* for defendant.

Before: ALLEN, P. J., and N. J. KAUFMAN and O'HARA,* JJ.

ALLEN, J. On January 25, 1974, a jury convicted defendant of forcible rape. MCLA 750.520; MSA 28.788. Defendant received a sentence of two to five years in prison, and appeals as of right.

This case presents two issues for review, first, whether the unobjected to and inadvertent statement of the complainant that she took a lie-detector test resulted in a miscarriage of justice, and second, whether the trial court erred in precluding defense counsel from cross-examining the complainant as to whether she had engaged in any prior sexual activity with third persons.

The complainant testified that subsequent to the

_____

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

conclusion of a party at the home which the complaining witness shared with another woman, two of the guests, C. W. Watson and Percy Coleman, returned to the house and suggested that complainant and her roommate accompany them to obtain some beer and a hamburger for the roommate. The roommate declined to accompany them, and the two men and complainant left the house. However, instead of going in the direction of a restaurant which was apparently a few blocks from the house, they drove in the opposite direction. The car became stalled, and the three people then proceeded to a nearby home owned by an acquaintance of the two men.

Coleman and complainant then left the home, and as they walked across a yard, Coleman grabbed her and pushed her up against a house. Subsequently defendant appeared, placed his hand over her mouth and said "Be cool, nothing will happen to you." Watson then told defendant and Coleman to leave the complainant alone, and accompanied her up one side of the street. Defendant and Coleman crossed the street and walked on the other side. When they reached the corner, Watson grabbed complainant's hair and forced her across the street to join the other two. The men then forced her into an upstairs apartment and took her to a bedroom. Coleman and Watson undressed, and Coleman helped complainant to do the same. In response to her vociferous objections and attempt to escape, defendant obtained a coathanger, unraveled it, and advised complainant that he would "show her how" to keep quiet. At this time, Coleman was unsuccessful in an attempt to achieve penetration due to complainant's struggling, and defendant then struck her with the hanger. Watson was also unsuccessful in his attempt at intercourse.

The victim was then allowed to go to the bathroom, and attempted to escape. Defendant grabbed her, said "I thought you would try something like this", and forced her back into the bedroom, where Coleman successfully had intercourse with her, and Watson simultaneously engaged her in an act of oral sex. Watson then accompanied complainant home, and she called the police after he left.

At trial, some photographs showing bruises and scratches on the victim's body were admitted into evidence. In the course of questioning the victim, the prosecutor asked "Were any pictures ever taken of you?" The witness replied, "Monday, after I took a lie detector test". Defense counsel failed to voice an objection to this remark, and has asserted in his brief and supporting affidavit that he failed to hear this statement. Counsel states that had he heard it he would have immediately requested a mistrial.

It is clear that even without counsel's assertion of what he would have done had he heard the statement at issue, our Court has the power, and perhaps duty, to consider the possible prejudicial impact of this evidence. See *People v Leroy Goodwin,* 40 Mich App 709, 715; 199 NW2d 552 (1972). Numerous factors have been considered by the court in determining whether or not sufficient prejudice resulted from the reference to a lie-detector test so as to constitute reversible error. The presence or absence of an objection by trial counsel is a relevant consideration, *People v Tyrer,* 19 Mich App 48, 50–51; 172 NW2d 53 (1969), *app dismissed,* 385 Mich 484; 189 NW2d 226 (1971), as is the fact that defense counsel failed to request a cautionary instruction. *People v Baker,* 7 Mich App 471, 476; 152 NW2d 43 (1967), *lv den,* 380 Mich 766 (1968), *cert den,* 393 US 953; 89 S Ct 382;

21 L Ed 2d 365 (1968). See also *People v Davis,* 53 Mich App 94, 96–97; 218 NW2d 787 (1974). However, our Court has noted that reversible error could be found whether or not an objection has been made or whether or not the cautionary instruction was given. *People v Bush,* 54 Mich App 77, 80; 220 NW2d 333 (1974).

Another factor to be considered is whether the reference to the lie-detector test was inadvertent, or whether it was purposefully interjected to bolster or rehabilitate a witness's credibility. A brief and inadvertent reference to a polygraph examination did not constitute reversible error in *People v Tyrer, supra,* 19 Mich App 48, 51. Although the complainant's statement showed that she had taken a polygraph examination, the results of that examination were not admitted into evidence, and her statement was volunteered by herself rather than elicited by the prosecutor. The prosecutor never used the words "polygraph" or "lie detector". *People v Paffhousen,* 20 Mich App 346, 351; 174 NW2d 69 (1969), *lv den,* 383 Mich 825 (1970). Reversible error will be found when there is repeated reference to the polygraph test, and where that testimony was used to bolster and rehabilitate the witness's credibility. *People v Leroy Goodwin,* 40 Mich App 709, 715; 199 NW2d 552 (1972). *Goodwin* distinguished *Tyrer, supra,* where the admission of an inadvertent and brief reference to a polygraph examination was not found to be a miscarriage of justice. On the other hand, reversible error was found where 15 pages of trial testimony was concerned with the operation of the polygraph machine, the test and results obtained therefrom, and whether the expert witness had an opinion as to whether or not defendant was truthful. See *People v Frechette,* 380 Mich 64, 69–72;

155 NW2d 830 (1968). An informant, the same witness involved in *Goodwin,* was also involved in *People v Lawson,* 48 Mich App 662, 663–665; 211 NW2d 96 (1973). The Court held that repeated references to the polygraph examination and the results of that examination, used to bolster and verify that witness's credibility, constituted reversible error. The trial court also failed to give a requested cautionary instruction. In the course of finding error, and noting that the witness was "beyond the category of an occasional or unsophisticated party", the Court noted "occasionally an unsophisticated witness may, inadvertently, make reference to improper information in the hearing of the jury". 48 Mich App 662, 665. See also *People v Bush, supra,* where reversible error was found when the fact of taking the test and its results were introduced to bolster the credibility of a witness. 54 Mich App 77, 81.

Whether the testimony used to bolster one's credibility is crucial is an important factor. *People v Leroy Goodwin, supra,* 40 Mich App 709, 716. Whether the witness's credibility played a vital role in the case below is one determinant to be considered. *People v Bush,* 54 Mich App 77, 81; 220 NW2d 333 (1974).

Finally, the Court must determine whether or not this testimony was emphasized and stressed during the trial, or whether it was merely an isolated incident not pursued beyond its initial introduction. This is somewhat related to the question of whether the reference to the polygraph was inadvertent. Where this testimony is not pursued or emphasized, error will not be found. See *People v Paffhousen, supra, People v Maguire,* 38 Mich App 576, 581; 196 NW2d 880 (1972), *lv den,* 387 Mich 781 (1972), *People v Goodwin, supra,* where

the testimony was emphasized, and *People v Lawson, supra,* which involved repeated references and emphasis upon the evidence of the polygraph examination.

We have examined the instant case in light of the factors discussed above, and have concluded that reversible error was not committed when the complaining witness made an inadvertent reference to the fact that she had taken a lie-detector test. That statement was made in reference as to when some pictures were taken of her, and was thus relevant only as to time or the sequence of events following the rape. See *People v Baker, supra,* 7 Mich App 471, 475. This reference was not pursued by either the prosecutor or defense counsel, and though the complainant's credibility was of course crucial, this testimony was not introduced to and did not seem to play any part in bolstering or enhancing the witness's credibility. The admission of this isolated, unemphasized reference to the taking of a lie-detector test does not constitute reversible error.

Likewise, reversible error was not committed when the trial court exercised its discretion to preclude defense counsel from questioning the complainant as to her prior sexual activities with third parties. Generally, the scope of cross-examination is within the sound discretion of the trial court, and our court will not disturb that discretion unless we are convinced it has been abused. *People v Madden,* 55 Mich App 363, 366; 222 NW2d 245, 246 (1974).

*People v McLean,* 71 Mich 309, 311–312; 38 NW 917 (1888), held that the trial court properly precluded defense counsel from offering evidence that complainant had engaged in prior sexual relations with a third person. While evidence of the com-

plainant's reputation for chastity and evidence as to specific acts with defendant may be shown, evidence of other sexual activities with third persons is inadmissible. 71 Mich 309, 310–311. The trial court was correct in precluding defense counsel's inquiry into the complainant's acts with third parties, and we find no abuse of discretion. We further note that public policy, as reflected in the recently enacted 1974 PA 266, MCLA 750.520(j); MSA 28.788(10)(1),[1] precludes the admission of "evidence of specific instances of the victim's sexual conduct", as well as opinion and reputation evidence of the victim's sexual conduct unless it specifically related to the victim's previous sexual activities with the defendant or if it was somehow related to "the source or origin of semen, pregnancy or disease".

Affirmed.

---

[1] We have not applied this act to defendant's case, but note it as supportive of the trial judge's exercise of discretion which, in concert with the court's grasp of precedent, led to the proper result.