480 A.2d 800

**Robert GUESFEIRD**

v.

**STATE of Maryland.**

**No. 133 Sept. Term, 1983.**

Court of Appeals of Maryland.

Aug. 24, 1984.

654

Argued by Gary S. Offutt, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Argued by Zvi Greismann and Carmina Szunyog, Asst. Attys. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on the brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

COUCH, Judge.

In the instant appeal, appellant presents three issues. First, whether an unsolicited and inadvertent reference by the complaining witness to taking a lie detector test is ground for reversible error where the trial court denied appellant's motion for a mistrial and gave a curative instruction. Secondly, whether appellant has a legitimate right to make a tactical decision regarding curative instructions being given in his favor, and thus, whether the trial court erred in so instructing the jury without consulting counsel. Thirdly, appellant questions whether the trial court erred in denying appellant's motion for a new trial based on newly discovered evidence, where two and a half months after the end of trial the complaining witness recanted her testimony. Although the second issue presents an intriguing question, and we note that at least one court has recognized such a right, *People v. Yatooma*, 85 Mich. App. 236, 271 N.W.2d 184, 187 (1978), we need not decide the second or third issue because we conclude that the first issue presents reversible error.

I.

Appellant, Robert Guesfeird, was found guilty, by a jury in the Circuit Court for Caroline County, of four counts of

committing child abuse and fourth degree sexual offenses against Tina Seiler, a young teenage girl who lived in appellant's home under his care and custody. Following his conviction, appellant appealed to the Court of Special Appeals, which affirmed his conviction in an unreported, per curiam opinion. No. 1616, September Term, 1982 (filed Sept. 9, 1983). Certiorari was granted to consider questions of public importance.

Tina Seiler, the complaining witness, was the principal witness in the state's case and was the only witness to give evidence supporting the allegations. Tina moved into appellant's household along with her older brother when their natural mother moved in with appellant. At some point, Tina's mother left the household and appellant's new girlfriend moved into the house, apparently before the alleged events occurred. Tina and her brother remained with appellant, and appellant later was awarded custody. Tina testified to a continuing practice of appellant forcing sexual intercourse on her, and she described two specific occasions at trial. Although it is confusing from the record, determining all the persons who resided in the household at the time of the alleged events is not pertinent or necessary here.

After approximately a year and a half of recurring incidents of sexual intercourse, Tina ran away. When Tina reached the point of this event in her testimony, the colloquy that is pertinent to the issue in this appeal occurred. When Tina was asked when it was that she eventually went to the authorities at school to discuss the problem, the following dialogue ensued:

"Q. Okay, and then did you eventually go to the school authorities and talk to a Mr. Arnold and some other people?

A. Yes.

Q. Did you tell them what was happening?

A. Um-hum, and that is when I took the lie detector and Bobby a ...

MR. KEHOE [Defense Counsel]: Objection, Your Honor. Approach the bench."

At the bench conference which followed, defense counsel moved for a mistrial on the ground that the jury would infer that the witness had passed the lie detector test. The trial judge inquired about the results of the test, and both counsel informed him that Tina had passed. The trial judge then denied defense counsel's motion and noted counsel's objection. Immediately after the bench conference, without consulting counsel, the trial judge gave a cautionary instruction to the jury to disregard any evidence of a lie detector test. Defense counsel promptly noted an objection to the instruction because of the emphasis it had created.

Tina was the only witness for the state to testify to the crimes alleged. Undoubtedly, if she was believed, her testimony was sufficient to support a conviction. As the trial developed, however, it became clear that the crucial question was whether Tina was to be believed.

Tina's testimony was contradicted by all the other witnesses who testified. Appellant testified and expressly contradicted Tina, denying any sexual misconduct. Appellant further testified that he was suffering from an automobile accident and was on crutches at the time of Tina's allegations and he therefore had difficulty moving about. Further, Tina's brother testified that he did not believe Tina's allegations. He testified that Tina had made approximately ten other similar accusations against several other men. The other accusations included Jim Alton, another man Tina's mother had lived with for several years. Tina's mother also testified to the accusations against Alton and added that Tina had retracted her accusation when Alton and her mother confronted her. Tina's mother testified that Tina explained that her accusation of Alton stemmed from her confusion from having fantasy dreams. Alton testified and corroborated the testimony of Tina's mother and brother. Tina's brother suggested that the recent accusations were motivated by Tina's desire to obtain a

change in custody because she was unhappy about performing her assigned household chores.

If the jury believed the testimony of appellant and his witnesses they would have had to acquit the appellant. The crucial issue in the case was the credibility of the witnesses. Indeed, both counsel recognized this and argued the point to the jury. Because the testimony was in direct contradiction, the case turned on whom the jury chose to believe. Obviously, the jury chose to believe Tina and found appellant guilty. Because credibility was the determinative issue in the trial, we must consider whether the trial judge committed reversible error when he denied appellant's motion for a mistrial after Tina's inadvertent and unsolicited reference to taking a lie detector test.

## II.

■ The standard for our review of the trial judge's decision is clear. The granting of a motion for mistrial is within the discretion of the trial judge. *Lusby v. State*, 217 Md. 191, 195, 141 A.2d 893, 895 (1958). "The decision by the trial court in the exercise of its discretion denying a mistrial will not be reversed on appeal unless it is clear that there has been prejudice to the defendant." *Wilhelm v. State*, 272 Md. 404, 429, 326 A.2d 707, 723 (1974); *Lusby*, 217 Md. at 195, 141 A.2d at 895; *see also Poole v. State*, 295 Md. 167, 183–84, 453 A.2d 1218, 1227 (1983). Hence, the ultimate question of this appeal is whether the reference to taking a lie detector test by the prosecution's principal witness so clearly prejudiced the appellant that a motion for mistrial should have been granted.

■ No dispute exists to the well established rule that evidence of polygraph tests is not admissible. *Lusby*, 217 Md. at 194–95, 141 A.2d at 895. The results of a lie detector test, as well as the fact of taking such a test, are not admissible. *Id.* at 195 n. 1, 141 A.2d at 895 n. 1; *Kelley v. State*, 288 Md. 298, 302, 418 A.2d 217, 219 (1980); *see also* Annot., 15 A.L.R.4th 824, 829–31 (1982) (cases cited

therein). In the instant appeal, no issue exists concerning the admissibility of Tina's statement. The issue is the prejudicial character of the statement. "A reference to a lie detector test in a criminal trial is not ground for reversal if the result of the test cannot be inferred from the circumstances or if the reference is not prejudicial to the defendant." *State v. Edwards,* 412 A.2d 983, 985 (Me.1980). *See also, e.g., State v. Marquez,* 113 Ariz. 540, 558 P.2d 692, 696 (1976) (in banc); *Johnson v. State,* 166 So.2d 798, 805 (Fla.Dist.Ct.App.1964); *Commonwealth v. Garland,* 475 Pa. 389, 380 A.2d 777, 781 (1977); *State v. Sutherland,* 94 Wash.2d 527, 617 P.2d 1010, 1011–12 (1980) (En Banc). Indeed, there have been cases in Maryland in which references to lie detector tests were held not to be so prejudicial as to warrant reversal. *See, Poole,* 295 Md. at 182–84, 453 A.2d at 1227; *Lusby,* 217 Md. at 195, 141 A.2d at 895.

In determining whether evidence of a lie detector test was so prejudicial that it denied the defendant a fair trial, courts have looked at many factors. The factors that have been considered include: whether the reference to a lie detector was repeated or whether it was a single, isolated statement; whether the reference was solicited by counsel, or was an inadvertent and unresponsive statement; whether the witness making the reference is the principal witness upon whom the entire prosecution depends; whether credibility is a crucial issue; whether a great deal of other evidence exists; and, whether an inference as to the result of the test can be drawn. *See, e.g., People v. Yatooma,* 85 Mich.App. 236, 271 N.W.2d 184, 186–87 (1978) (factors listed); and cases discussed *infra; see generally* Annot., 15 A.L.R.4th 824 (1982). No single factor is determinative in any case. The factors themselves are not the test, but rather, they help to evaluate whether the defendant was prejudiced.

In *State v. Edwards,* 412 A.2d 983 (Me.1980), the court reversed a conviction for gross sexual misconduct. *Id.* at 987. On direct examination, the complaining witness made an inadvertent reference to the fact that she had taken a lie

detector test. *Id.* at 984. The court stated that it is not "necessary to require a mistrial to be automatic upon any mention of a polygraph examination by a witness." *Id.* at 985. The appropriate analysis was explained by the court.

"When the prosecutor's questioning inadvertently elicits a witness's reference to a polygraph test, there is cause for mistrial if, but only if, the reference to the test raises an inference about the result that substantially prejudices the defendant's case. *Kaminski v. State,* [63 So.2d 339 (Fla.1952)]; *State v. Davis,* [351 So.2d 771 (La.1977)]; *Commonwealth v. Camm,* 443 Pa. 253, 277 A.2d 325 (1971), *cert. denied,* 405 U.S. 1046, 92 S.Ct. 1320, 31 L.Ed.2d 589 (1972). In deciding whether to grant or deny a defendant's motion for mistrial in such a situation, the trial court must weigh various factors bearing on the substantiality of any resulting prejudice to the defendant. Among other factors, it must determine (1) whether the inference as to the result of the test may be crucial in assessing the witness's credibility, and (2) whether 'the witness's credibility play[s] a vital role in the case.' *People v. Whitfield,* 58 Mich.App. 585, 589–90, 228 N.W.2d 475, 477–78 (1975)."

*Id.* The court added that "[t]he fact that the reference is isolated or inadvertent does not alone insure that the reference is not prejudicial." *Id.* The court reversed because the credibility of the complaining witness was a crucial issue. She was the principal prosecution witness, whose uncorroborated testimony provided the only basis on which the jury could find the defendant guilty. *Id.* "The reference was sufficient to inform the jury that she had taken the test, and the natural and reasonable implication of the reference was that she had passed it." *Id.* at 987.

In *People v. Yatooma,* 85 Mich.App. 236, 271 N.W.2d 184 (1978), the reference to a lie detector test in a prosecution for burning real property was unsolicited, isolated and inadvertent. *Id.* at 187. The court, nevertheless, reversed the conviction because the crucial issue of the trial was the credibility of the witnesses versus that of the defendant.

*Id.* The fact that credibility was a crucial issue outweighed the fact that the polygraph reference was isolated and inadvertent. "The jury, required to choose between two directly conflicting stories . . ., cannot be presumed to have been unaffected by evidence that one of the witnesses had successfully passed a lie-detector test prior to his testimony." *Id.* The court concluded that a sufficient possibility existed that the jury may have resolved the credibility issue by reference to the polygraph testimony. *Id.*

In several additional cases where the credibility of the witnesses was a vital issue, courts have found reversible error for the denial of a motion for mistrial where the defendant was prejudiced by a reference to a lie detector test. *See, e.g., Roleson v. State,* 272 Ark. 346, 614 S.W.2d 656, 660 (1981); *State v. Davis,* 351 So.2d 771, 773–74 (La.1977) (reference unsolicited and unresponsive); *Hembree v. State,* 546 S.W.2d 235, 240 (Tenn.Crim.App.1976) (reference unsolicited and unresponsive); *Nichols v. State,* 378 S.W.2d 335, 338 (Tex.Crim.App.1964).

Further, the fact that the reference was not solicited by the prosecutor is not determinative. Although the situation of a solicited reference certainly is more egregious, it is only one factor and is not the determinative test; the test is the resulting prejudice to the defendant. Simply putting before the jury the fact that a lie detector test was taken can be the equivalent of revealing the results. *E.g., Kaminski v. State,* 63 So.2d 339, 340–41 (Fla.1953) (in banc); *State v. Edwards,* 412 A.2d at 987; *Commonwealth v. Johnson,* 441 Pa. 237, 272 A.2d 467, 469 (1971); *Nichols v. State,* 378 S.W.2d at 337. Therefore, the harm is done by the fact that it was said, regardless of how it arose. Knowing that a witness took a lie detector test, a jury might make the unmistakable inference that the results of the test were that the witness told the truth, and is telling the truth as he testifies. *See, e.g., Crawford v. State,* 321 So.2d 559, 561 (Fla.Dist.Ct.App.1975), *approved mem.,* 339 So.2d 214 (Fla.1976). Such an inference might substantially prejudice the defendant. "Even though the results of the

tests were not admitted, the obvious implication was that had the results been negative, the case would not have been prosecuted." *People v. York*, 29 Ill.App.3d 113, 329 N.E.2d 845, 850 (1975). Because the prejudicial inference follows from the fact that a statement was made, it is not necessarily significant whether the statement was solicited or inadvertent.

In several cases, courts have reversed convictions involving solicited references to lie detector tests. However, the analysis of those courts focuses on the prejudice to the defendant, not on how the statement arose, improper though it may have been. In *Kaminski v. State*, 63 So.2d 339 (Fla.1953), the court reversed and noted the state's whole case depended on that witness and the statement was solicited to rehabilitate the witness's credibility. *Id.* at 341. In *Kaminski*, the defendant and other witnesses gave testimony that, if believed, was sufficient for acquittal. *Id.* at 340. Further, the key prosecution witness's testimony was inconsistent with other state witnesses. *Id.* at 339. Under these circumstances, substantial prejudice to the defendant was clearly shown. A similar result can be seen in *Crawford v. State*, 321 So.2d at 561, where the witness involved was the only witness to the alleged crime called by the state, and the reference to a lie detector was used to bolster credibility. We note that in some cases, some courts have not found it material even to indicate whether the reference was solicited or not. *See, e.g., People v. York*, 329 N.E.2d at 850. Thus, whether the reference was solicited is only one factor, and the key is to determine whether the defendant has been substantially prejudiced in the particular facts and circumstances of the case, after evaluating all the relevant factors.

In *State v. Kilpatrick*, 2 Kan.App.2d 349, 578 P.2d 1147 (1978), the facts are similar to the instant case. The defendant was being prosecuted for taking indecent liberties with his teenage daughter (by lewd fondling or touching) and stepdaughter (by sexual intercourse). *Id.* at 1148. The state's case was based on the testimony of the two girls;

however, the testimony in the case conflicted. *Id.* The defendant expressly denied the accusations, and his testimony was corroborated by his wife and the girls' brother. *Id.* During the stepdaughter's testimony, she inadvertently volunteered that she had failed a lie detector test on another occasion when she had made similar accusations against the defendant. *Id.* She indicated that when she failed the test the prosecution did not go any farther. When the daughter testified, the prosecutor asked her if she had taken a lie detector test concerning the alleged incident, and she replied affirmatively. *Id.* The court held that there was prejudicial error. *Id.* at 1149.

> "To have put before the jury the additional fact that [the stepdaughter] had been given a polygraph test and 'failed it, and it didn't go any farther than this' (i.e., there was no prosecution by the State), followed shortly thereafter by the inquiry of [the daughter] as to whether she had taken a polygraph test to which she replied, 'Yes,' followed by the affirmative act of prosecution, was in effect to reveal to the jury the results of the test given [the daughter]."

*Id.* The court held that the reference to the test was prejudicial error because "it may well have been the deciding factor in the minds of some, if not all, of the jurors." *Id.* Further, although the trial judge did not admonish the jury to disregard the reference to the polygraph tests, the court noted that to have done so might only have emphasized the fact. *Id.*

Even in cases that have held that a reference to a lie detector test was not reversible error, the courts have not diverged from the focus on prejudice to the defendant. In these cases, the courts simply have found that in the particular facts and circumstances of the particular case, the defendant was not substantially prejudiced by the reference, and hence, the error did not deny him a fair trial. For instance, in *Sullivan v. State*, 303 So.2d 632 (Fla.1974), *cert. denied*, 428 U.S. 911, 96 S.Ct. 3226, 49 L.Ed.2d 1220 (1976), not only was the polygraph reference an isolated one, but

credibility was not the crucial issue. *Id.* at 634–35 (comparing *Kaminski v. State, supra* ). Further, a large body of evidence of defendant's guilt already had been introduced, *id.* at 635, and the evidence of his guilt was overwhelming, *id.* at 636. Moreover, the witness never clearly stated that he already had taken the polygraph test, thus it was not clear that the jury would make an impermissible inference. *Id.* at 635. Even though the prosecutor improperly elicited the polygraph testimony, and the court admonished him for that, under the circumstances of the case the court held that the trial court did not commit reversible error in denying the defendant's motion for mistrial. *Id.*

Similarly, in *State v. Refuge,* 270 So.2d 842 (La.1972), although the court held it was not a reversible error, the court agreed with the analysis in *Kaminski v. State, supra.* *Id.* at 846. The court pointed out that although it was an extremely close question, "upon examination of the entire record and in the context in which the error occurred" there was no reversible error. *Id.* at 847. The witness involved was an exculpatory witness for the defendant and, in the context of the entire record, it appeared clear that the witness was fabricating his entire story anyway. *Id.* Under the particular circumstances of the record, the court did not believe the error was prejudicial to the substantial rights of the accused. *Id.*

Although the appellee points to authority which held that there was not reversible error, those cases simply show particular facts where the prejudice to the defendant was not substantial. Indeed, those courts follow the same analysis that we have reviewed. Comparing appellee's authority with other cases from the same jurisdictions illustrates that the analysis is no different, and that the particular facts of the cases cited by appellee are distinguishable. *Compare People v. Dumas,* 49 Ill.App.3d 756, 7 Ill.Dec. 455, 364 N.E.2d 616, 619 (1977) (held harmless, blurted reference did not go to a material issue concerning the defendant's guilt or innocence) *with People v. York,* 29 Ill.App.3d 113, 329 N.E.2d 845, 850 (1975) (reversed where

prosecution hinged on veracity of those witnesses); *compare Marini v. State*, 593 S.W.2d 709, 715–16 (Tex.Crim. App.1980) (not reversible where reference did not even refer to whom the examination was given) *with Nichols v. State*, 378 S.W.2d 335, 338 (Tex.Crim.App.1964) (reversed where credibility was the crucial issue and the whole case depended on the testimony of a 14 year old girl); *compare People v. Whitfield*, 58 Mich.App. 585, 228 N.W.2d 475, 478 (1975) (not reversed where inadvertent and unemphasized reference was not introduced to bolster credibility, nor did it seem to play any part in doing so) *with People v. Yatooma*, 85 Mich.App. 236, 271 N.W.2d 184, 187 (1978) (reversed where even though was an isolated reference, sufficient possibility existed that jury may have resolved critical credibility issue by reference to polygraph testimony); *also compare Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366, 368 (1980) *with Roleson v. State*, 272 Ark. 346, 614 S.W.2d 656, 659–60 (1981).

■ The Maryland cases of *Lusby v. State*, 217 Md. 191, 141 A.2d 893 (1958) and *Poole v. State*, 295 Md. 167, 453 A.2d 1218 (1983), simply represent cases where, in the particular case, looking at the entire record, the defendant was held not to have been substantially prejudiced. From the facts given in *Lusby*, the Court does not appear to have analyzed the factors that we have outlined today. The Court relied upon the only case on point that was found, *State v. Sheppard*, 100 Ohio App. 345, 128 N.E.2d 471 (1955), *aff'd*, 165 Ohio St. 293, 135 N.E.2d 340, *cert. denied*, 352 U.S. 910, 77 S.Ct. 118, 1 L.Ed.2d 119 (1956), which held that a reference to only the fact of taking a lie detector test was not prejudicial. *Lusby*, 217 Md. at 195, 141 A.2d at 895. We already have reviewed the many cases decided since *Lusby*, and are convinced that the rule given in *Sheppard* is no longer persuasive. We note, however, that the decision in *Lusby* was not necessarily incorrect. The simple fact that the fact of taking a lie detector test was indicated does not necessarily indicate reversible error; it depends on the facts and circumstances of the particular

case to determine whether the defendant was substantially prejudiced.

In *Poole,* the reference to a lie detector test was made by the prosecutor in his closing argument. He commented that an alibi witness had not volunteered to take a lie detector test. 295 Md. at 182, 453 A.2d at 1226. The trial judge denied the motion for mistrial because he found that the comment did not give the impression that the witness was offered, but refused to take, a lie detector test. *Id.* at 182, 453 A.2d at 1227. This Court agreed with the trial judge and, on those facts and in view of the entire record, could not find clear prejudice to the defendant and properly left the issue within the sound discretion of the trial judge. *Id.* at 183, 453 A.2d at 1227.

Neither *Poole* nor *Lusby* suggests that a witness's reference to a lie detector test is automatically harmless, or automatically curable by admonishing the jury. Indeed, it is arguable that rather than being curative, such an instruction might only serve to emphasize the prejudice. *See People v. Yatooma,* 271 N.W.2d at 187; *Nichols v. State,* 378 S.W.2d at 338. In the instant case, it is sufficient to hold that the harm was so great that the harm could not be removed by an instruction. *See Nichols v. State,* 378 S.W.2d at 337.

In the instant case the sole prosecution witness on which the alleged crimes were based was Tina. Her uncorroborated testimony conflicted directly with the testimony of the defendant and all the other witnesses. In this case, credibility was the crucial issue for the jury. Tina, who stated that she had taken a lie detector test, was the principal witness, and the sole prosecution witness whose testimony supported the charges. The unavoidable inference for the jury to make is that if she took the test, she passed and was telling the truth at trial; otherwise, the prosecution would not have gone forward with her as the only witness. We believe some, if not all, of the jurors might well have turned to this inadmissible evidence as the

deciding factor in determining whom to believe. Therefore, we hold that it is clear that the defendant was prejudiced by the witness's inadvertent reference to taking a lie detector test, and the trial court committed reversible error in denying appellant's motion for mistrial. Accordingly, we reverse and remand for a new trial.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR CAROLINE COUNTY AND REMAND TO THAT COURT FOR A NEW TRIAL. COSTS TO BE PAID BY APPELLEE.*

DAVIDSON, J., concurs in the result.